UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL S. IOANE,<br><br>        Plaintiff,<br><br>    vs.<br><br>MERLAK, et al.,<br><br>        Defendants. | **1:19-cv-01585-DAD-GSA-PC**<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A <u>BIVENS</u> CLAIM, WITHOUT LEAVE TO <u>AMEND</u>**<br>**(ECF No. 1.)**<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

**I.    PROCEDURAL HISTORY**

Michael S. Ioane ("Plaintiff") is a former federal prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to <u>Bivens vs. Six Unknown Agents</u>, 403 U.S. 388 (1971). On November 6, 2019, Plaintiff filed the Complaint commencing this action. (ECF No. 1.) The Complaint is now before the court for screening. 28 U.S.C. § 1915A.

**II.   SCREENING REQUIREMENT**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

**III. SUMMARY OF COMPLAINT**

Plaintiff is a former federal prisoner. The events at issue in the Complaint allegedly took place at Taft Correctional Institution (TCI) in Taft, California, when Plaintiff was incarcerated there. Plaintiff names as defendants Steven Merlak (TCI Warden), Georgina Puentes (TCI Associate Warden), Stephanie Hicks (RN), Sergeant J. Johns, Lieutenant T. Craig, Ms. Hall (Dental Hygienist), Curtis Logan (Unit Manager), Dan Joslin (Vice President), Management and Training Corporation (MTC), and Does #1-10 (collectively, "Defendants"). All of the Defendants were employees of MTC at TCI during the relevant time period. A summary of Plaintiff's allegations follows:

Plaintiff had been incarcerated at TCI since January 2012 serving a 108-month sentence for a white-collar non-violent offense. Plaintiff had a spotless disciplinary history at TCI before November 2018. With the application of good time credits his sentence was scheduled to terminate on May 2, 2020, but his release date was advanced to February 29, 2020 and his home confinement eligibility date was set by the BOP as August 29, 2019.

On November 29, 2018, Plaintiff was 44 minutes late to a dental appointment with defendant Hall at TCI's medical clinic. He was late because he was engaged in leathercraft in the recreation department and when it was time for his dental appointment, there was no Correctional Officer present to lock up Plaintiff's sharp leatherworking tools, so Plaintiff had to do it himself. If he had not locked up the tools he would have been subject to severe disciplinary action.

At the medical clinic a sign was posted stating that tardiness, or a missed appointment, would result in cancellation of the appointment until six months later. There was no warning that noncompliance could result in disciplinary action. When Plaintiff arrived late to his appointment he apologized profusely and explained about the tools being locked up. Defendant Hall excused the tardiness and completed the teeth cleaning without incident.

Later that afternoon Plaintiff was summoned to the clinic. Defendant Hall was angry and agitated, accusing Plaintiff of lying about the reason for his tardiness. Hall claimed that Plaintiff falsely stated that he had a prison job involving tools. Defendants Hicks, Johns, and another unknown officer appeared. Hicks had also concluded that Plaintiff had lied to Hall. It was a simple understanding and when Plaintiff explained, Hall conceded the misunderstanding. Plaintiff was asked to apologize for his tardiness again, which he freely did. Then Plaintiff asked for an apology in turn for being yelled at and being falsely accused of lying. This enraged Hall and Hicks, and Sergeant Johns then took Plaintiff to the special holding unit (SHU). Plaintiff was taken there solely in retaliation for making his grievance, in violation of his First Amendment rights.

Plaintiff was charged with items #310, unexcused absence from work or program assignment, and #312, insolence toward a staff member. These charges were false. Also, the report said that Plaintiff flailed his arms which was impossible since Plaintiff was holding a cup of coffee. After 7 days Plaintiff had a hearing on December 6, 2018 by case workers. Defendant Lane found Plaintiff guilty for both items and sanctioned him with loss of commissary and visitation privileges for 30 days. Defendant Johns' detention order caused Plaintiff to be placed in administrative segregation in the SHU. The detention order was wrong because Plaintiff did

not pose any threat to anyone.  Defendant Craig approved the order.  While he was in the SHU Plaintiff never received a detention hearing.  Only two hours after Plaintiff's hearing with defendant Lane, defendant Logan told Plaintiff there were procedural irregularities and the hearing would be vacated and be rescheduled immediately by defendant Logan.

Plaintiff stayed in the SHU until the next hearing on December 14, 2018.  Plaintiff was not provided with copies of the new incident reports, or written notice of vacation of the first hearing.  Plaintiff stayed in the SHU for four more days, the term imposed by defendants Logan, Puentes, Johns, Craig, and an unknown officer all out of retaliation for Plaintiff grieving his false accusations.  Defendants knew their actions were not justified.

Defendants Hall, Hicks, Johns, Craig, Logan, Puentes and Merlak wrongly accused and charged Plaintiff with disciplinary infractions, then wrongfully placed him in administrative segregation for 12 days longer than permitted by federal law.  These defendants denied Plaintiff due process by failing to provide him with adequate notice of the hearings, and for not providing a hearing on retaining him in administrative segregation.  Defendant Puentes denied Plaintiff a social furlough as well because of the bogus infractions.

Plaintiff has long suffered from sleep apnea and requires the use of a CPAP[1] machine to breathe at night.  He provided his own CPAP machine.  The machine required regular maintenance to prevent infections and life-threatening complications.  TCI stopped adhering to these maintenance standards from February 15, 2019 to August 13, 2019.  Plaintiff suffered from infections, poor health, lack of energy, and fears that the machine would fail to work properly.

Over a period of six months in 2019, defendants Puentes, Joslin, and MTC interfered with a medical doctor's professional recommendations and denied Plaintiff adequate medical care. Defendant Dan Joslin, Vice President of MTC, ratified the wrongful conduct of these defendants. The maintenance on the CPAP machine was required, and Dr. Rucker agreed but told Plaintiff that TCI and MTC did not want to spend the money.  Plaintiff filed an administrative appeal concerning the matter, which was denied, and Plaintiff continued to be ill and suffer.  Warden

---

[1] Continuous Positive Airway Pressure.

Puentes interfered with Dr. Rucker's professional opinion regarding the necessity of replacing the CPAP parts.

In February 2019, Plaintiff's unit team at Taft recommended that Plaintiff serve the last nine to twelve months of his sentence at a halfway house. Upon final review by the warden, Acting Warden Puentes reduced the recommended time in the halfway house to six months. Plaintiff alleges that defendant Puentes reduced the recommendation in retaliation for Plaintiff's request that Hicks and Hall apologize, and for Plaintiff's continued request for administrative remedies with respect to the disciplinary action.

The FSA required the BOP to credit Plaintiff with 65 additional good time days, as of July 19, 2019. As a result, Plaintiff's release date was advanced by 65 days, and his halfway house placement was reduced by 65 days. Plaintiff's family contacted the RRM to inquire what could be done to restore the full six months in the halfway house for Plaintiff. The RRM agreed to advance the transfer date to the halfway house to August 29, 2019, but Unit Manager Logan refused to resubmit the necessary paperwork. Plaintiff alleges that defendants Logan, Puentes, and the new Warden Merlak, agreed to that policy knowing it was in violation of the law, and also did so in retaliation for Plaintiff's grievances. The intent was to falsely imprison Plaintiff.

Defendants Logan, Puentes, and Merlak denied Plaintiff his appropriate halfway house and home confinement terms, out of retaliation. With the intent of chilling Plaintiff's exercise of his First Amendment rights, defendant Dan Joslin, Vice President of MTC, ratified the wrongful conduct of these Defendants.

Plaintiff requests monetary damages, a writ of mandamus to compel the BOP and TCI to refer Plaintiff for home confinement evaluation, and expungement of the two disciplinary infractions from Plaintiff's record.

### IV. PLAINTIFF'S CLAIMS

#### A. Bivens Claims

Plaintiff brings claims under Bivens vs. Six Unknown Agents, 403 U.S. 388 (1971). Bivens actions are identical to civil rights actions under 42 U.S.C. § 1983 except for the replacement of state actor under § 1983 by federal actor under Bivens. Starr v. Baca, 652 F.3d

1202, 1206 (9th Cir. 2011) ("Although more limited in some respects, a Bivens action is the federal analog to an action against state or local officials under § 1983.") (internal quotation marks omitted); see Bivens, 403 U.S. 388 (1971). The unique, judicially-created Bivens remedy provides plaintiffs an avenue for damages against constitutional violations by federal officers. Solida v. McKelvey, 820 F.3d 1090, 1091 (9th Cir. 2016). Relief under Bivens does not encompass injunctive and declaratory relief where the equitable relief sought requires official government action. See Higazy v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a Bivens action is an award for monetary damages from defendants in their individual capacities."). Solida, 820 F.3d at 1093.

The basis of a Bivens action is some illegal or inappropriate conduct on the part of a federal official or agent that violates a clearly established constitutional right. Baiser v. Department of Justice, Office of U.S. Trustee, 327 F.3d 903, 909 (9th Cir. 2003). "To state a claim for relief under Bivens, a plaintiff must allege that a federal officer deprived him of his constitutional rights." Serra v. Lappin, 600 F.3d 1191, 1200 (9th Cir. 2010) (citing see Schwarz v. United States, 234 F.3d 428, 432 (9th Cir. 2000). "A plaintiff must plead more than a merely negligent act by a federal official in order to state a colorable claim under Bivens." O'Neal v. Eu, 866 F.2d 314, 314 (9th Cir. 1988).

**B.     Bivens After Ziglar v. Abbasi**

"The Supreme Court [] made clear that 'expanding the Bivens remedy is now a disfavored judicial activity,' and has 'consistently refused to extend Bivens to any new context or new category of defendants.'" Buenrostro v. Fajardo, 1:14-cv-00075-DAD-BAM (PC), 2017 WL 6033469, at *2 (E.D. Cal. Dec. 5, 2017) (quoting Ziglar v. Abbasi, 137 S.Ct. 1843, 1857 (2017)). "Ziglar sets forth a two-part test to determine whether a Bivens claim may proceed." Buenrostro, 2017 WL 6033469, at *2. "A district court must first consider whether the claim presents a new context from previously established Bivens remedies." Id. "If so, it must then apply a 'special factors' analysis to determine whether 'special factors counsel hesitation' in expanding Bivens absent affirmative action by Congress." Id. (quoting Ziglar, 137 S.Ct at 1857, 1875.)

"'If [a] case is different in a meaningful way from previous Bivens cases decided by [the Supreme Court], the context is new.'" Buenrostro, 2017 WL 6033469, at *2 (quoting Ziglar, 137 S.Ct. at 1859). "Ziglar provides several examples of differences meaningful enough to make a given context a new one, including 'the constitutional right at issue.'" Buenrostro at *2 (quoting Ziglar at 1860). "To date, the Supreme Court has only recognized a Bivens remedy in the context of the Fourth, Fifth, and Eighth Amendments." See Bivens, 403 U.S. 388 (Fourth Amendment prohibition against unreasonable searches and seizures); Davis v. Passman, 442 U.S. 228 (1979) (Fifth Amendment gender-discrimination); Carlson v. Green, 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishments Clause for failure to provide adequate medical treatment).

The Supreme Court has "consistently refused to extend Bivens to any new context or new category of defendants." Ziglar, 137 S.Ct. at 1857. If a claim presents a new context in Bivens, then the court must consider whether there are special factors counseling against extension of Bivens into this area. Id. The Supreme Court's precedents "now make clear that a Bivens remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" Id. Thus, "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Id. at 1857–58. This requires the court to assess the impact on governmental operations system-wide, including the burdens on government employees who are sued personally, as well as the projected costs and consequences to the government itself. Id. at 1858. In addition, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action." Id.

### 1. **Defendant Management Training Corporation**

Plaintiff names Management Training Corporation (MTC), a private corporation, as a defendant in this action.[2] Plaintiff may not bring a claim for damages against MTC. In Corr.

---

[2] The court takes judicial notice of two cases, Edison v United States of America, et al., 822 F.3d 510 (9th Cir. 2016) and Valdez v. Benov, 715 F. App'x 611 (9th Cir. 2017), which show that

Servs. Corp. v. Malesko, 534 U.S. 61, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001), the Supreme Court held that there was no implied private right of action, pursuant to Bivens, for damages against private entities that engaged in alleged constitutional deprivations while acting under color of federal law. The Court noted that in FDIC v. Meyer, 510 U.S. 471, 484, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), it had previously declined to extend Bivens to permit suit against a federal agency, even though the agency was otherwise amenable to suit. Malesko, 534 U.S. at 61. If a federal agency is not amenable to a Bivens action, the Court reasoned, allowing a plaintiff to initiate a Bivens action against a private corporation contractually providing services pursuant to a contract with that federal agency would inappropriately extend Bivens. Id. The Court's opinion emphasized that "the purpose of Bivens is to deter the officer," not the agency. FDIC, 510 U.S. at 485, 114 S.Ct. 996 (citing Carlson, 446 U.S. at 21, 100 S.Ct. 1468).

Accordingly, Plaintiff's Bivens claims against MTC fail as a matter of law and should be dismissed with prejudice for failure to state a claim, without leave to amend.

### 2. Due Process – Fifth Amendment Claim

Plaintiff brings a due process claim under the Fifth Amendment. Since Bivens, the Supreme Court recognized an implied due process cause of action under the Fifth Amendment against federal employees in Davis, 442 U.S. 228. In Davis, the plaintiff claimed that she was subjected to gender discrimination by a congressman in violation of the Fifth Amendment.

The Fifth Amendment claim in the present case presents a new context because Plaintiff's claim differs in a meaningful way from the Fifth Amendment Claim in Davis. Here Plaintiff, a prisoner incarcerated at Taft Correctional Institution, claims that his rights were violated when prison officials made false disciplinary reports against him, housed him in administrative segregation for 12 days, found him guilty of false accusations, and took away his commissary and visitation privileges for 30 days. A claim concerning disciplinary action against a prisoner

---

"Taft is a BOP facility operated by Management Training Corporation, a private prison company." Under Federal Rule of Evidence 201, the Court may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Thus, the Court takes judicial notice of the fact that Taft is a BOP facility operated by Management Training Corporation, a private prison company.

is very different from a claim that a congressman subjected woman to gender discrimination. Because the claim presents a new context the court must consider whether special factors counsel against extension of Bivens into the new area.

The Supreme Court has not recognized a Bivens remedy for a Fifth Amendment claim for the alleged failure of a prison official to provide due process or equal protection. See Buenrostro, 2017 WL 6033469, at *3 (declining to find an implied Bivens cause of action for Fifth Amendment due process), subsequently aff'd sub nom. Luis Buenrostro v. Fajardo, 770 F. App'x 807 (9th Cir. 2019). Indeed, the Supreme Court has consistently declined to expand an implied right of action to procedural and substantive due process claims. Vega v. United States, 881 F.3d 1146, 1152 n.2 (9th Cir. 2018) (discussing FDIC, 510 U.S. at 473-74 (procedural due process)); Schweiker v. Chilicky, 487 U.S. 412, 414 (1988) (procedural due process); United States v. Stanley, 483 U.S. 669, 671-72 (1987) (substantive due process); Chappell v. Wallace, 462 U.S. 296, 297, 304-05 (1983) (substantive due process).

The Ninth Circuit extended Bivens to a Fifth Amendment procedural due process claim in Lanuza v. Love, 899 F.3d 1019 (9th Cir. 2018). However, the Supreme Court instructs that Bivens cases are decided by reviewing only Supreme Court decisions. Ziglar, 137 S. Ct. at 1859. In any event, the due process claims in Lanuza differ in a meaningful way from Plaintiff's due process claims because Lanuza involved a government attorney's intentional forgery of immigration documents, and Plaintiff's claims involve disciplinary action against a prisoner. See id., 899 F.3d at 1021. Ziglar, 137 S. Ct. at 1859; see also Vega, 881 F.3d at 1153 (Fifth Amendment procedural due process claims present new contexts under Bivens and declined to extend Bivens remedies). Lanuza's due process claims are not similar to those brought by Plaintiff in the present case.

In 2018, the Ninth Circuit found that a former prisoner's Fifth Amendment procedural due process claim could not proceed under Bivens. Vega, 881 F.3d at 1154–55. The plaintiff, Vega, alleged that private employees of a residential reentry center, Pioneer House, violated his Fifth Amendment right to procedural due process. Id. at 55. First, the Court found that the claim arose in a context different from the context previously recognized for claims under Bivens and

therefore had to determine whether any alternative existing process protected plaintiff's interests. Id.  The Court decided that plaintiff had meaningful alternative remedies since plaintiff could have sought review under the Administrative Remedy Program, could have sought review of an incident report by Unit Discipline Committee, or could have brought state claims.   Id.  Thus, Vega had alternative means for relief against the private defendants' alleged violations of his Fifth Amendment rights.  Id.  First, Vega had a remedy "to seek formal review of an issue relating to *any aspect* of his . . . own confinement" under the Administrative Remedy Program ("ARP"). 28 C.F.R. § 542.10(a) (emphasis added). See Malesko, 534 U.S. at 74, 122 S.Ct. 515.  Id.  Under that provision, Vega could have sought the assistance of counsel, § 542.16(a), appealed any adverse findings to the Regional Director, § 542.15(a), and then to the FBOP's General Counsel, id., and the ARP could have provided for review of Pioneer House policies or any issue in the disciplinary hearing process and procedure. Id. fn.4.

Second, Vega could have sought review of the incident report by the UDC under 28 C.F.R. § 541.7, which is exactly what he ultimately did. During such a review, Vega would be permitted to appear before the board, § 541.7(d), "make a statement and present documentary evidence," § 541.7(e), and appeal the UDC's decision through the aforementioned APR, § 541.7(i). Id.  In Vega's case, this review system ultimately resulted in a determination that the evidence was insufficient to show that Vega failed to follow Pioneer House program rules, and he was returned to a residential reentry program in Tacoma, Washington.  Id.

Third, Vega had state law claims as an alternative remedy. In his First Amended Complaint, Vega in fact brought state law claims against the Pioneer House employees under (1) the Washington Law Against Discrimination, RCW 49.60.010, *et seq.*, and for (2) false imprisonment, (3) intentional infliction of emotional distress, and (4) negligence. Id. Further, Vega asserted additional claims for (5) false arrest, (6) malicious prosecution, (7) abuse of process, and (8) invasion of privacy, under the FTCA. Although the FTCA does not apply to private employees such as the Pioneer House defendants, see United States v. Orleans, 425 U.S. 807, 813–14, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976), Vega does not contend that he could not

///

have brought those or other state law claims directly under state law. Id.  He merely failed to do so. Id.

In the present case, as in Vega, Plaintiff would have similar alternative remedies available to him, such as pursuing his administrative grievances through each level of the Bureau of Prison's grievance procedure which Plaintiff alleges that he utilized in this case (see Complaint, ECF No. 1 at 2.).  Therefore, the court finds that Plaintiff cannot assert his Fifth Amendment due process claim under Bivens against Defendants in this case.  Plaintiff's Fifth Amendment due process claim should be dismissed with prejudice for failure to state a claim, without leave to amend.

### 3. Retaliation – First Amendment Claim

Plaintiff alleges that defendants Logan, Puentes, Johns, Craig, and an unknown officer imposed Plaintiff's term in the SHU out of retaliation for Plaintiff grieving false accusations against him.   Plaintiff also alleges that defendants Logan, Puentes, and Merlak denied Plaintiff his appropriate halfway house and home confinement terms, out of retaliation, with the intent to falsely imprison Plaintiff.  In addition, Plaintiff alleges that defendant Dan Joslin, Vice President of MTC, ratified the wrongful conduct of defendants Logan, Puentes, and Merlak when they denied Plaintiff his appropriate halfway house and home confinement terms with the intent of chilling Plaintiff's exercise of his First Amendment rights. Plaintiff also claims that his request that Hicks and Hall apologize, and his continued request for administrative remedies with respect to the disciplinary action against him, were protected activities.

The Supreme Court has never implied a Bivens action under any clause of the First Amendment. Pitts v. Matevousian, No. 117CV01658SABPC, 2018 WL 3388413, at *2–3 (E.D. Cal. July 10, 2018), report and recommendation adopted, No. 117CV01658DADSABPC, 2018 WL 8838763 (E.D. Cal. Sept. 17, 2018) (citing see Reichie v. Howards, 566 U.S. 658 n.4 (2012) ("We have never held that Bivens extends to First Amendment claims."); Iqbal, 556 U.S. at 675 (assuming without deciding that Bivens extended to First Amendment claim)).  In addition, the Supreme Court declined to extend Bivens to a First Amendment free speech claim relating to

///

federal employment noting "that Congress is in a better position to decide" the issue. Id. (citing Bush v. Lucas, 462 U.S. 367, 390 (1983)).

Further, Plaintiff has alternative remedies available to him, including the Bureau of Prisons administrative grievance process which Plaintiff alleges that he utilized in this case (See Complaint, ECF No. 1 at 2.). Id. (citing see Wilkie v. Robbins, 551 U.S. 537, 550 (2007); see also Malesko, 534 U.S. at 69 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.") (citation omitted)). In addition, the fact that Congress has not extended Bivens to claims under the First Amendment is itself a factor counseling hesitation. Id. (citing Ziglar, 137 S. Ct. at 1865)).

Based on the foregoing, the Court finds that under the analysis set forth in Ziglar, there is no implied right of a Bivens action for a First Amendment retaliation claim and therefore this claim should be dismissed with prejudice for failure to state a claim, without leave to amend.

### 4. Medical Claim – Eighth Amendment Claim

Since Bivens, the Supreme Court recognized an implied medical claim under the Eighth Amendment against federal employees in Carlson, 446 U.S. 14. The Eighth Amendment claim in the present case presents a new context after Carlson. In Carlson, the plaintiff, a mother, brought suit on behalf of her deceased son who was a federal prisoner, claiming that he suffered injuries and died as a result of Government officials' deliberate indifference to his medical needs in violation of the Eighth Amendment. In the present case, Plaintiff, a federal prisoner, alleges that over a period of six months in 2019, defendants Puentes, Joslin, and MTC interfered with Dr. Rucker's [not a defendant] professional recommendations and denied Plaintiff necessary maintenance of his CPAP machine, causing Plaintiff to suffer from infections, poor health, lack of energy, and fears that the machine would fail to work properly.

Although Carlson and the present case both brought Eighth Amendment medical claims alleging that prison officials treated their serious medical needs with deliberate indifference, the present case presents a new context because in the present case, Plaintiff was incarcerated at a

///

privately-operated prison, while in Carlson the plaintiff was incarcerated at a federal prison operated by the federal government.

In 2001, the U.S. Supreme Court held that Bivens should not be extended to Eighth Amendment medical claims by federal prisoners in private facilities because such prisoners have access to tort remedies that are unavailable to federal prisoners housed in Bureau of Prisons facilities. Malesko, 534 U.S. at 71-73. The Court stated that it was conceded at oral argument that alternative remedies were just as great as any remedy under Bivens. Id. at 73. "Federal prisoners in private facilities enjoy a parallel tort remedy that is unavailable to prisoners housed in government facilities." Id. at 73-74. The Court further stated that the "heightened deliberate indifference standard of the Eighth Amendment would make it considerably more difficult for respondent to prevail than on a theory of ordinary negligence." Id. at 73-74.

Eleven years later in Minneci v. Pollard, 565 U.S. 118 (2012), the U.S. Supreme Court considered whether a Bivens action based on the Eighth Amendment was available against employees of a privately operated federal prison. The plaintiff was a prisoner at a federal facility operated by a private company and filed an Eighth Amendment claim against the prison medical staff. Id. at 118. The Court held that a person cannot assert an Eighth Amendment Bivens claim based on insufficient medical treatment against employees of a private prison. Id. at 131.

The Court noted that a Bivens action will not succeed when there is an existing alternative process that provides adequate protection. Id. at 118, 120-121 (citing Wilkie v. Robbins, 551 U.S. 537, 550 (2007)). In California, state tort law provides for ordinary negligence actions, based upon "want of ordinary care or skill" for actions of "negligent failure to diagnose or treat," and for actions based on failure of persons with a custodial duty to protect others from "unreasonable risk of physical harm." Minneci 565 U.S. at 128 (citing Cal. Civ. Code §§ 1714(a), 1714.8(a)). The Supreme Court recognized that California courts have specifically applied this negligence law to jailers, including private operators of prisons. Id. Additionally, the Court noted that California's state tort law reflects general principles of all state tort laws. Id. (citing Restatement (Second) of Torts §§314A(4), 320 (1963-1964)). Such state law imposes general

///

tort duties of reasonable care, including medical care, on prison employees in every state of privately managed federal facilities. Id. at 128.

Based on the foregoing, Plaintiff cannot succeed with his Eighth Amendment medical claim under Bivens against Defendants in this case, thus his Eighth Amendment claim should be dismissed with prejudice for failure to state a claim, without leave to amend.

### 5. State Law Claims

Plaintiff brings claims for negligence, breach of contract, and false imprisonment. These are state law claims. Violation of state tort law, state regulations, rules and policies of the CDCR, or other state law are not sufficient to state a claim for relief under Bivens.

Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. In this instance the Court fails to find that Plaintiff can state cognizable federal claims in the Complaint. Therefore, Plaintiff's state claims fail and should be dismissed for failure to state a claim, without leave to amend.[3]

## V. RECOMMENDATIONS AND CONCLUSION

The court finds that Plaintiff fails to state any cognizable claims in the Complaint against Defendants upon which relief may be granted under Bivens. Moreover, given that TCI is a private prison, the court finds that Plaintiff is unable to allege any facts, based on the circumstances he challenges, that could state a medical claim under the Eighth Amendment under Bivens. Therefore, the court shall recommend that this case be dismissed, with prejudice, for failure to state a claim.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Here, the court is persuaded that Plaintiff is unable to

---

[3] Plaintiff is also advised that the Government Claims Act requires exhaustion of state law claims with California's Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in his complaint. Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); ); Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988). Plaintiff has not done so.

allege any facts, based upon the circumstances he challenges, that would state a cognizable claim under Bivens. "A district court may deny leave to amend when amendment would be futile." Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013). The court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. The Complaint be DISMISSED, with prejudice, for failure to state a claim upon which relief may be granted under Bivens, without leave to amend; and

2. The Clerk of Court be directed to close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after the date of service of these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **October 14, 2020**         **/s/ Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE